* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for modifications regarding the causation of plaintiff's left knee injury.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named plaintiff-employee and the named defendant-employer.
3. The carrier liable on the risk is correctly named above.
4. Plaintiff's average weekly wage will be determined from an Industrial Commission Form 22 Wage Chart and testimony at the hearing.
5. Plaintiff sustained an injury on or about October 25, 2002, with the exact date to be determined by the Industrial Commission.
6. The injury arose out of and in the course of her employment and is compensable.
7. At the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Packet Containing Industrial Commission Forms and Discovery Responses, which was admitted into the record, and marked as Stipulated Exhibit (3); and
 c. An Industrial Commission Form 22 Wage Chart, which was admitted into the record, and marked as Stipulated Exhibit (4).
8. The issues to be determined are as follows:
 a. whether plaintiff is entitled to a second opinion from a doctor of her choosing after being released by Dr. Candela on March 26, 2003;
 b. whether plaintiff is entitled to ongoing medical treatment for her ankle;
 c. whether plaintiff's left knee problems and left wrist pain are causally related to her initial compensable injury or whether these conditions are unrelated and not compensable;
 d. whether defendants are subject to the imposition of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 for not authorizing the second medical opinion sought by plaintiff and refusing additional medical treatment for her ankle;
 e. whether the Industrial Commission erred in denying Defendants' Form 24 application to terminate benefits effective March 26, 2003 and whether plaintiff is entitled to total disability benefits after March 26, 2003;
 f. whether defendants are entitled to a credit or reimbursement for an overpayment of benefits dating back to the May 17, 2003 filing date of their Form 24 Application;
 g. whether plaintiff unjustifiably refused suitable employment and whether her benefits should be barred pursuant to N.C. Gen. Stat. § 97-32; and
 h. whether plaintiff's average weekly wage has an impact on benefits paid to date.
 * * * * * * * * * * * EVIDENTARY RULING
Defendants' objection to plaintiff's testimony on Page 13 of the transcript regarding what Physician Assistant Jim Oles allegedly said to plaintiff is sustained and the motion to strike is granted.
 * * * * * * * * * * *
Based upon all of to the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-six (56) years of age, with her date of birth being October 22, 1948. Plaintiff has a Masters Degree and prior to working for defendant-employer she was employed as a teacher.
2. Prior to beginning her employment with defendant-employer, plaintiff was receiving Social Security disability payments for chronic fatigue syndrome, fibromyalgia and congestive heart failure. In 1997 plaintiff was involved in a serious automobile collision resulting in headaches, neck, shoulder and back pain, fatigue, chest pain, hand and finger numbness and breathing problems. Nevertheless, plaintiff sought to return to the work force with defendant-employer.
3. Plaintiff began her employment with defendant-employer in September 2002 on a part-time basis, earning $11.00 per hour over a twenty (20) hour work-week. Thereafter, on October 24, 2002, plaintiff began working full time for defendant-employer with benefits earning $11.00 per hour for forty (40) hours per week.
4. Prior to beginning her full-time work with defendant-employer, plaintiff was assigned to work with a seven year old special needs female. When plaintiff switched to full-time employment on October 24, 2002, she continued working with the same child. As part of plaintiff's duties in this capacity, she was to follow the child throughout the day. On October 25, 2002, plaintiff and the child were on a playground when the child began to run away from plaintiff's line of sight. While attempting to catch up to the child, plaintiff stepped in a hole causing her right ankle to turn and "pop." The compenability of this claim for a right ankle lateral avulsion fracture was admitted by defendants through the filing of an Industrial Commission Form 60 filed on November 6, 2002. This Form 60 indicated an average weekly wage of $440.00. Contrary to the Forms 18 and 33, pretrial proposals and her trial testimony, plaintiff did not report an injury to her left knee, wrists or right shoulder when she reported the right ankle injury.
5. Following this incident, plaintiff was assisted to her feet by other teachers. At that time, plaintiff testified that she believed her ankle may have only been sprained, and because this was her second day of full-time employment, wanted to work remainder of the day. At the end of the day, plaintiff was questioned by the school's secretary regarding her walking ability. Plaintiff informed the secretary she had fallen on the playground. Plaintiff was then transported by an office assistant to an Urgent Care facility.
6. At Urgent Care, plaintiff was evaluated and x-rays were taken of her right ankle. She made no mention of a left knee or other injuries. Plaintiff was later released home with her ankle wrapped in an ace bandage and also was referred to Dr. Stephen Candela, an orthopaedic surgeon. On October 28, 2002, plaintiff was examined by Mr. Jim Oles, a Physician's Assistant in Dr. Candela's office. P.A. Oles diagnosed plaintiff as having sustained a fracture of the lateral malleolus in her right ankle for which she was treated conservatively. Additionally, plaintiff's ankle was placed in a CAM walker, and she was medically excused from work.
7. As for plaintiff's left knee and left wrist, the records of Dr. Candela's office do not reflect complaints of this nature.
8. Plaintiff returned to Dr. Candela on November 18, 2002, at which time new x-rays taken of plaintiff's right ankle. Dr. Candela interpreted these x-rays as showing the fracture to be healing. Dr. Candela also continued to medically excuse plaintiff from work. Thereafter, plaintiff continued to treat with Dr. Candela's office over the next several months, during which time different methods of bracing her right ankle were attempted, and she participated in physical therapy. Dr. Candela released plaintiff from his care and released her to return to work full duty with no restrictions on March 26, 2003, though he did not expect her to be "pain free." Plaintiff knew Dr. Candela released her for work at full duty with no restrictions.
9. Upon being released by Dr. Candela, plaintiff took her return to work note to defendant-employer and spoke with Ms. Wanda Phipps. Additionally, plaintiff attempted to contact her direct supervisor, Ms. Christina Jackson, and testified that she left Ms. Jackson a voice message. Eventually, plaintiff arrived at the impression that she was no longer employed by defendant-employer. This belief developed following a misunderstanding regarding the availability of a position assisting the seven year-old special needs child with whom plaintiff worked prior to her injury. The child's guardian requested another mentor for the child. Thus, plaintiff's prior position was no longer available.
10. Due to plaintiff's belief regarding her employment status with defendant-employer, she filed a complaint with the North Carolina Department of Labor. Following the filing of this complaint, defendant-employer contacted plaintiff and offered her in May 2003 a part-time para-professional position that paid $8.00 per hour for twenty (20) hour per week. Although plaintiff claimed that she declined this position due to her ongoing physical problems, the employment was suitable from a physical restriction standpoint, as plaintiff was under no restrictions. The job duties were essentially the same as plaintiff's pre-injury position though at a lower wage. Plaintiff was later offered a full-time professional job that became available in June 2003. This job was essentially the same position that plaintiff held prior to her October 2002 accident and offered the same wages. Plaintiff also refused this job offer and she did not return to work for Employer-Defendant. The plaintiff refused this position without justification and without any evidence that the offer was not detailed enough for her to understand and consider and without medical evidence that these jobs were not physically suitable.
11. Ms. Catherine Ann Bastin, defendant-employer's Human Resources Manager, testified that plaintiff declined the offer of the para-professional position because it was at a lower rate of pay, as opposed to being due to her physical condition.
12. On the issue of offers of employment subsequent to the date of plaintiff's injury by accident, the testimony of defendant's witnesses as opposed to plaintiff is given greater weight.
13. On February 21, 2003, plaintiff was shopping at a Big Lots store. As she was squatting down, she was struck by some falling pictures. This caused plaintiff to fall back, landing on her left hip and to twist her back and hit her left hand. Plaintiff was transported by ambulance to an emergency room where she reported experiencing left hip pain, right ankle pain and back pain. Plaintiff was diagnosed as having a left hip contusion, provided medication and released. The emergency room records do not indicate any complaints of left knee pain, but they do reference specifically a new right ankle injury.
14. Because, as plaintiff contends, she continued to experience pain caused by her October 25, 2002 injury, she sought advice from her family physician, Dr. Richard Berry. However, it was not until some six months after the compensable right ankle injury that plaintiff first complained of left knee pain. On April 7, 2003, Dr. Berry requested an MRI of plaintiff's right ankle and left knee, and referred her to Dr. Brian Altman, an orthopaedic specialist. Dr. Altman initially examined plaintiff on April 21, 2003, at which time he diagnosed her as having laxity of her right ankle, status post injury and a torn medial meniscus of the left knee. Though plaintiff claimed in April 2003 that she developed left knee pain only three weeks prior, later she claimed she injured her left knee when she injured her right ankle on October 25, 2002. Dr. Altman performed surgery on June 29, 2003 on plaintiff's left knee, with the procedure consisting of a left medial meniscectomy and chondroplasty. In October 2003, plaintiff returned to Dr. Altman and reported increased pain and numbness in her right ankle. Dr. Altman then modified his diagnosis, finding that plaintiff had chronic lateral laxity of the right ankle, for which he prescribed an air cast.
15. In January 2004, plaintiff returned to Dr. Altman with continued complaints of problems, including weakness, with her right ankle despite use of the air cast. Based upon these continued symptoms, Dr. Altman referred plaintiff to physical therapy. On February 11, 2004, plaintiff again returned to Dr. Altman and reported increased pain in her left knee. At that time, Dr. Altman opined that plaintiff had degenerative disc disease with the beginnings of arthritis. Dr. Altman never restricted plaintiff due to her ankle complaints and even when he prescribed an air cast, she could do whatever she wanted and was not restricted.
16. An April 2004 MRI of plaintiff's right ankle revealed a deficit with plaintiff's medial malleolus in her ankle, which is a different area of the ankle than that which Dr. Candela treated, that being the lateral aspect. Plaintiff's testimony regarding the type and extent of her right ankle, left knee and bilateral hand symptoms from the date of her admittedly compensable injury by accident on October 25, 2002 is not accepted as being credible.
17. Based upon the totality of the credible lay and medical evidence of record, plaintiff's left knee condition for which she sought treatment from Dr. Altman was not the direct and natural result of, and not causally related to her October 25, 2002 injury by accident.
18. There is sufficient credible lay and medical evidence of record upon which to find that plaintiff's right ankle condition after the Big Lots fall on February 21, 2003 was not a direct and natural result of, and was not causally related to, the compensable October 25, 2002 fall.
19. There is insufficient credible lay and medical evidence of record upon which to find that plaintiff's bilateral hand complaints are the direct and natural result of, or causally related to her October 25, 2002 injury by accident.
20. There is sufficient credible lay and medical evidence of record upon which to find that the paraprofessional part-time and professional full time positions offered to plaintiff were suitable. Therefore, plaintiff's refusals were not reasonable.
21. Plaintiff was unable to earn any wages in the same or any other employment from October 26, 2002 though March 26, 2003. Plaintiff's inability to earn any wages in her former position with defendant-employer or in any other employment for the period subsequent to March 26, 2003 was not as a result of plaintiff's compensable injury of October 25, 2002. Thus, the Form 24 request was erronously denied.
22. Prior to September 2002, plaintiff was unemployed. In September 2002, plaintiff began working part-time for defendant-employer at approximately 20 hours per week for $11 per hour. On October 24, 2002, after some six weeks of part-time work, plaintiff began working full-time for defendant-employer at 40 hours per week for $11 per hour. The very next day, on October 25, 2002, plaintiff suffered the compensable injury to her right ankle. The Full Commission finds that plaintiff has failed to demonstrate by the greater weight of evidence that, as of October 25, 2002, plaintiff would have been able to maintain full-time employment but for her compensable injury. Accordingly, and in accordance with N.C. Gen. Stat. § 97-2(5), the Full Commission calculates plaintiff's average weekly wage based on her demonstrated capacity for working 20 hours per week at $11 per hour. The Full Commission concludes, based on the evidence of record, that an average weekly wage calculation of $220 per week is fair to both plaintiff and defendants as an approximation of the amount of wages that plaintiff would have earned but for her compensable injury by accident.
23. Defendants' defense of this matter and actions in relation to plaintiff's right ankle are not without reason, and are not indicative of stubborn, unfounded litigiousness.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 25, 2002, plaintiff sustained an admittedly compensable injury by accident to her right ankle arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's left knee condition for which she sought treatment from Dr. Altman was not the direct and natural result of, and nor causally related to her October 25, 2002 injury by accident. N.C. Gen. Stat. § 97-2(6).
3. Regardless of whether defendants bear the burden to produce sufficient evidence that plaintiff's right ankle condition subsequent to her fall at Big Lots on February 21, 2003 is not causally related to her October 25, 2002 injury by accident, or whether plaintiff bears the burden to prove that a new injury to her right ankle is a direct and natural result of or causally related to her compensable injury, the credible evidence of record is sufficient for the Full Commission to conclude that plaintiff's current condition is unrelated to her compensable injury. See, e.g., Parsons v. Pantry, Inc., 126 N.C. App. 540,485 S.E.2d 867 (1997). Accordingly, plaintiff's right ankle condition subsequent to her fall at Big Lots on February 21, 2003 was not the direct and natural result of, or causally related to, her October 25, 2002 injury by accident. N.C. Gen. Stat §97-2(6).
4. Further, based upon the credible lay and medical evidence of record, plaintiff's left wrist/bilateral hand complaints are not the direct and natural result of, or causally related to, her October 25, 2002 injury by accident. N.C. Gen. Stat. § 97-2(6).
5. Because plaintiff has failed to establish a wage earning capacity of a full-time 40-hour work week, the Full Commission finds that a fair and just approximation of plaintiff's average weekly wage at the time of her admittedly compensable injury by accident is $220.00, which yields a compensation rate of $146.74 per week. N.C. Gen. Stat. § 97-2(5)
6. There is sufficient credible lay and medical evidence of record upon which to find that the part-time and full time positions offered to plaintiff were suitable. N.C. Gen. Stat. §97-32. Therefore, plaintiff's refusals were unreasonable and she is barred from receiving ongoing benefits during the period of refusal. N.C. Gen. Stat. § 97-32.
7. As the result of her October 25, 2002 injury by accident, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $146.74 per week for the period of October 28, 2002 through March 26, 2003, subject to a credit in defendants' favor for total disability benefits over paid. N.C. Gen. Stat. §§ 97-29; 97-42.
8. Plaintiff is entitled to defendants paying all medical expenses incurred by plaintiff as a result of her compensable right ankle injury but not for the expenses subsequent to her reaching maximum medical improvement on March 26, 2003 when any problem to her right ankle were as a result of the February fall at Big Lots. N.C. Gen. Stat. §§ 97-25 and 97-25.1.
10. Because defendants' defense of this matter and actions in relation to plaintiff's right ankle are not without reason, and are not indicative of stubborn, unfounded litigiousness, plaintiff is not entitled to an award of attorney's fees as a sanction pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff total disability compensation at the rate of $146.74 per week for the period of October 28, 2002 through March 26, 2003 subject to a credit in defendants' favor for total disability benefits over paid. This compensation is subject to the attorney's fee approved herein.
2. Defendants are not obligated to pay for a second opinion regarding plaintiff's right ankle or for medical expenses incurred or to be incurred related to her current right ankle and left knee injuries which were not caused by her October 25, 2002 work related injury. Further, Dr. Altman is not designated as her authorized treating physician.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff.
4. Defendants shall pay the costs.
This the 10th day of May 2006.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER